[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 24, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-11295
Non-Argument Calendar

_____

D. C. Docket No. 04-00006-CR-1-CDL-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee-Cross-Appellant,

versus

RONNIE J. GREER,

Defendant-Appellant-Cross-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Georgia

_____

**On Petition for Rehearing**

(February 24, 2006)

Before BLACK, CARNES and PRYOR, Circuit Judges.

CARNES, Circuit Judge:

We vacate our prior opinion in this appeal, ___ F.3d ___ (11th Cir. Jan. 10, 2006), and substitute for it this one. In all other respects the appellant's petition for a rehearing, insofar as it is addressed to the panel, is denied.

The Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), provides a minimum mandatory sentence of fifteen years for anyone who violates 18 U.S.C. § 922(g) after three convictions for a violent felony or a serious drug offense. In this case the jury convicted Ronnie J. Greer of violating 18 U.S.C. § 922(g)(1), and it also found that he had been convicted of at least one of the three previous felonies listed in the indictment. Those three listed state court felony convictions were for three separately committed offenses of terroristic threats in violation of Ga. Code Ann. § 16-11-37(a) (2003). There is no dispute that certified copies of state court documents evidencing those convictions, which were introduced without objection at trial, proved the three prior convictions.

The district court nonetheless refused to impose the minimum mandatory sentence on Greer because the jury had not determined—and it was never asked to determine—whether Greer's three prior convictions were for violent felony crimes. The district court believed that United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), and Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000),

2

require that the jury, and not the judge, find that a previous conviction was for a violent crime for ACCA purposes. As a result of that belief, the district court imposed a sentence of only 78 months, instead of the 180 months mandated by the ACCA. Greer has appealed his conviction, and the government has cross-appealed the 78-month sentence and the Booker ruling underlying it.

## I.

On July 6, 2002, a five-year-old boy, who was outside with his sister playing on a utility trailer was killed when a pipe bomb that had been stored in a box on the trailer exploded. Greer's residence was next door, he had been overheard in the past talking about "blowing people up," and he was a former employee of a business that used pipes consistent with the type used in the explosive device. He quickly became a suspect. Three days after the fatal explosion federal and state law enforcement officers searched Greer's residence pursuant to a federal search warrant. They did not find evidence that would support charging him in connection with the bomb, but they did find live ammunition in his house, including one pistol cartridge, two rifle cartridges, and a shotgun shell, all in plain view on a table just inside the front door.

No guns were found in the house, but the ammunition was enough to charge Greer with violation of 18 U.S.C. § 922(g)(1), which prohibits a felon from

possessing ammunition.  To establish the "felon" part of the charge, the indictment alleged that Greer had three prior felony convictions for making terroristic threats. It also charged that the provisions of  18 U.S.C. § 924(e)(1) were applicable, subjecting Greer to a fifteen-year minimum mandatory sentence upon conviction.

At trial, Jay Bagwell, who is a special agent for the Bureau of Alcohol, Tobacco, Firearms and Explosives, and David Smith, who is an agent for the Georgia Bureau of Investigation, testified about participating in the search of Greer's residence.  They told the jury that four live rounds of  ammunition, which had traveled in interstate commerce, were found on a table inside the house. Although Greer had not been at the house when it was searched, the agents described documents and other items they found in the house that indicated Greer lived there:  mail; bills; letters Greer had written and signed; and a lot of notebooks he had compiled.  Some of the documents had recent dates on them.  The agents also told of signs—such as a well-stocked kitchen and toiletries in the bathroom—indicating that the house was occupied.

Brad Donnelly, another ATF agent, testified that Greer had been convicted in the state courts of Georgia three times for the felony of "terroristic threats." Those three separate convictions occurred in 1989, 1993, and 2000.  Although that state crime carries the possibility of years in prison,  Greer received probation each

4

time.

After the government had presented its case in chief, Greer's counsel failed to move for a judgment of acquittal. Greer then testified as the only witness in his defense. He admitted living in Cusseta, Georgia, at the residence that was searched, and said that he had lived there since 1988. Greer admitted knowing that ammunition was on the table. He first said that the bullets the agents found were not at the house when he moved in four years before the search "unless they were on the outside of the house," but then said that "they could have been [sic] when I moved into the house, the bullets were there." In any event, he acknowledged knowing the ammunition was there. The defense called no other witnesses.

The jury was instructed that it could convict Greer only if it found beyond a reasonable doubt that he had knowingly possessed ammunition which had been shipped or transported in interstate commerce, and before he possessed the ammunition he had been convicted of a crime punishable by imprisonment for a term in excess of one year. The jury found Greer guilty as charged.

As we have mentioned, the district court determined that the ACCA minimum mandatory sentence of fifteen years could not be applied in this case in light of the Booker decision. Having freed itself from the strictures of the ACCA, the court calculated the guideline range to be 63–78 months imprisonment and

5

sentenced Greer to 78 months.

## II.

Greer raises several contentions against his conviction. First, he asserts that the government failed to prove beyond a reasonable doubt that he possessed the ammunition found in his home. We review the sufficiency of the evidence <u>de novo</u>, viewing the evidence and making all reasonable inferences in favor of the verdict. <u>United States v. Garcia</u>, 405 F.3d 1260, 1269 (11th Cir. 2005).

When a defendant does not move for a judgment of acquittal at the close of the evidence, he must shoulder a somewhat heavier burden: we will reverse the conviction only where doing so is necessary to prevent a manifest miscarriage of justice. <u>United States v. Bender</u>, 290 F.3d 1279, 1284 (11th Cir. 2002). "This standard requires the appellate court to find that the evidence on a key element of the offense is so tenuous that a conviction would be shocking." <u>Id.</u> Greer did not move for a judgment of acquittal, but we will put that failure aside here because it does not matter. Even if he had moved for a judgment of acquittal, the result of this appeal would be the same.

The only element of the crime defined in 18 U.S.C. § 922(g)(1) that Greer argues was not proven beyond a reasonable doubt is knowing possession of the ammunition. <u>See generally</u> <u>United States v. Wright</u>, 392 F.3d 1269, 1273 (11th

6

Cir. 2004), cert. denied, 125 S. Ct. 1751 (2005). The government need not prove actual possession in order to establish knowing possession; it need only show constructive possession through direct or circumstantial evidence. Id. Constructive possession exists when the defendant exercises ownership, dominion, or control over the item or has the power and intent to exercise dominion or control. United States v. Gunn, 369 F.3d 1229, 1235 (11th Cir. 2004), cert. denied, 125 S. Ct. 324 (2004).

The ammunition was found in plain view on a table just inside the front door. Even before Greer testified in the defense part of the case, there was sufficient evidence that he lived in the house and had been there not long before the search. There was no evidence in either the government's case or the defense case that anyone else lived in the house with Greer. His argument that the jury could not reasonably find beyond a reasonable doubt from this evidence that he knowingly possessed the ammunition is frivolous.

Greer also contends that the government failed to prove that venue was proper in the Columbus Division of the Middle District of Georgia. The government did not put in evidence that Cusseta, Georgia, where Greer lived and the ammunition was found, was in the territorial jurisdiction of the district court; there was no stipulation to venue; and there was no discussion of whether judicial

7

notice could be taken of the necessary facts relating to venue. The venue issue simply was not raised at trial.

A defendant has a Sixth Amendment right to be tried in the district in which he committed the offense. United States v. Roberts, 308 F.3d 1147, 1151 (11th Cir. 2002). However, a defendant waives an objection to venue by failing to raise it before trial, subject to the exception that objecting at the close of evidence is soon enough if the indictment alleges an incorrect venue and the defendant was not aware of that defect until the government presented its case. Id. at 1151–52. Greer did not raise an objection to venue at trial or at the close of evidence, and thus any venue issue was waived.

Greer's final contentions involve his trial counsel's failure to move the district court for a judgment of acquittal and failure to object on venue grounds. He says that those failures deprived him of effective assistance of counsel. Generally, we do not address ineffective assistance claims on direct appeal, except in the rare instance when the record is sufficiently developed for us to do so. United States v. Verbitskaya, 406 F.3d 1324, 1337 (11th Cir. 2005). This is one of those rare instances.

To prevail on a claim of ineffective assistance of counsel, Greer must prove: (1) that his attorney's performance fell below an objective standard of

reasonableness, and (2) that he was thereby prejudiced, that is, there is a reasonable probability that but for counsel's deficient performance, the result of his trial would have been different. Id. at 1337–38 (11th Cir. 2005) (citing Strickland v. Washington, 466 U.S. 688, 104 S. Ct. 2052 (1984)). The prejudice component disposes of both of Greer's ineffectiveness claims.

As for the claim arising from his counsel's failure to move for a judgment of acquittal on the sufficiency of the evidence not relating to venue, it did not matter. As we have already explained, the evidence the government presented during its case was sufficient to convict Greer. His conviction would have been upheld even if there had been a timely acquittal motion.

As for the claim arising from trial counsel's failure to object on venue grounds, "[t]he government must support its choice of venue only by a preponderance of the evidence." United States v. Smith, 918 F.2d 1551, 1557 (11th Cir. 1990) (internal quotation omitted). This burden can be met through direct or circumstantial evidence and judicial notice can be used. United States v. Males, 715 F.2d 568, 569–70, 570 n.2 (11th Cir. 1983) (holding that although there was no direct testimony that the crime occurred in Dade County, Florida, venue was established because there were sufficient references to the crime taking place in Miami, and stating that this Court can take judicial notice of Miami's location in

Dade County). Law enforcement officers testified during the government's case that the search was conducted and the live ammunition was found at Greer's house, located at 380 Highway 520 in Cusseta, Georgia. We take judicial notice that Cusseta, Georgia is the county seat of Chattahoochee County which is within the Columbus Division of the Middle District of Georgia. See 28 U.S.C. § 90(b)(3); Males, 715 F.2d at 570 n.2. Had Greer's trial counsel raised a venue objection at trial, the district court would have taken judicial notice of the same fact, and we would have upheld its action in doing so. Greer was not prejudiced in the least by his counsel's failure to bring up venue. This ineffective assistance of counsel claim, like Greer's other one, fails.

That is the end of Greer's appeal. We turn now to the government's cross-appeal.

## III.

The government's cross-appeal puts at issue the district court's refusal to impose the fifteen-year mandatory minimum sentence the Armed Career Criminal Act, 18 U.S.C. § 924(e), provides. Pursuant to the ACCA, any defendant who is convicted of violating § 922(g), including § 922(g)(1), as Greer was, who has three previous convictions for a violent felony, must be sentenced to not less than fifteen years. The term "violent felony" is defined in the ACCA as any crime that:

10

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another

18 U.S.C. § 924(e)(2)(B). Greer's three previous convictions, each of which was listed in the federal indictment in this case, were all for making terroristic threats in violation of O.C.G.A. § 16-11-37. As the district court explained, that Georgia statute prohibits both violent and non-violent behavior, so proof that a defendant was convicted for violating the statute does not, without more, prove that he has been convicted of a violent felony for ACCA purposes. United States v. Greer, 359 F. Supp. 2d 1376, 1380–81 (M.D. Ga. 2005).

There was, however, more in this case, the more being the indictments for each of the three state court convictions. Those indictments, which were introduced at the sentencing hearing, proved that Greer's three prior convictions were crimes of violence under the ACCA. There was no real dispute about that. As the district court stated during the sentencing hearing, "if you review the indictment and the convictions, it clearly indicates that the previous acts were crimes of violence. That's clearly indicated." Sentencing Tr. at 14. The district court explained that "the court of appeals will have this before them, so they'll see it clearly indicates it was a crime of violence." Id. at 14–15. Greer did not question

11

the accuracy of the district court's characterization of the indictments at the sentencing hearing and does not question it now.

Although the district court recognized and even emphasized that the indictments underlying Greer's three prior convictions indisputably established that they were for violent felonies within the meaning of the ACCA, it declined to apply the enhanced penalties required by the statute. See 18 U.S.C. § 924(e)(1). The court did so because it believed that if anything beyond the conviction itself and the statutory elements had to be considered in making the violent crime finding, the Constitution requires that the jury make it. The court was mistaken in that belief.

The controlling Supreme Court precedent is the pre-Booker and pre-Apprendi decision in Almendarez-Torres v. United States, 523 U.S. 224, 118 S. Ct. 1219 (1998). In that case the Court held that the factual issue of whether a defendant has been convicted of an "aggravated felony" for 8 U.S.C. § 1326(b)(2) enhancement purposes is not to be treated as an element of the offense for constitutional purposes, and as a result the prior conviction is not required to be alleged in the indictment. Id. at 226, 118 S. Ct. at 1222 ("[T]he subsection is a penalty provision, which simply authorizes a court to increase the sentence for a recidivist."). The district court's decision cannot be reconciled with the full force

12

of Almendarez-Torres. As we have said several times, unless and until the Supreme Court specifically overrules Almendarez-Torres, we will continue to follow it. E.g., United States v. Camacho-Ibarquen, 410 F.3d 1307, 1316 n.3 (11th Cir. 2005) ("[T]he Supreme Court has not explicitly overruled Almendarez-Torres. As a result, we must follow Almendarez-Torres."); United States v. Guadamuz-Solis, 232 F.3d 1363 (11th Cir. 2000) ("Almendarez-Torres remains the law until the Supreme Court determines that Almendarez-Torres is not controlling precedent.").

More than once we have specifically rejected the argument that Almendarez-Torres was undermined by the Apprendi decision. See United States v. Marseille, 377 F.3d 1249, 1257–58 (11th Cir. 2004) (rejecting an Apprendi-based attack by a defendant whose sentence was enhanced under the ACCA, U.S.S.G. §§ 4B1.1 and 4B1.4(a)); U.S. v. Miles, 290 F.3d 1341, 1348 (11th Cir. 2002) (rejecting an Apprendi-based attack on life sentence imposed under the ACCA where the indictment did not allege and jury did not find that the defendant had three prior violent felony convictions).

Our decision in United States v. Shelton, 400 F.3d 1325, 1329 (11th Cir. 2005), is contrary to the implication of the district court's ruling, which is that Booker did what Apprendi did not—partially overrule the Almendarez-Torres

13

decision. In <u>Shelton</u>, we said this:

> Shelton first argues that the district court erred when it enhanced his sentence based on a judicial fact-finding of drug quantity and based on his prior convictions. We readily dispense with that issue. The Supreme Court consistently has rejected Shelton's argument that a district court errs when it considers prior convictions in sentencing a defendant under the Guidelines. In <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), the Supreme Court "held that the government need not allege in its indictment and need not prove beyond a reasonable doubt that a defendant had prior convictions for a district court to use those convictions for purposes of enhancing a sentence." <u>United States v. Marseille</u>, 377 F.3d 1249, 1257 (11th Cir.2004) (citation omitted). This conclusion was left undisturbed by <u>Apprendi</u>, <u>Blakely</u>, and <u>Booker</u>.
>
> Moreover, in <u>Booker</u>, the Supreme Court reaffirmed its holding in <u>Apprendi</u>. <u>See</u> <u>Booker</u>, 125 S.Ct. at 756 (opinion of Stevens, J.) (reaffirming that "[a]ny fact (<u>other than a prior conviction</u>) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt" (emphasis added)). Thus, a district court does not err by relying on prior convictions to enhance a defendant's sentence.

400 F.3d at 1329. In a footnote attached to that passage in <u>Shelton</u>, we cited the Sixth Circuit's decision in <u>United States v. Barnett</u>, 398 F.3d 516, 525 (6th Cir. 2005), which held that "there is no language in <u>Booker</u> suggesting that the Supreme Court, as part of its remedial scheme adopted in that case, intended to alter the exception to <u>Apprendi</u> allowing district courts to consider the fact and nature of prior convictions, without submitting those issues to the jury." <u>See also</u>

14

United States v. Marcussen, 403 F.3d 982, 984 (8th Cir. 2005) (concluding that Shepard v. United States, 543 U.S. ___, 125 S. Ct. 1254 (2005), "lends further support to the rule that the sentencing court, not a jury, must determine whether prior convictions qualify as violent felonies").

To be fair, the district court's decision in this case was issued before our decision in Shelton. It also preceded our statement in United States v. Orduno-Mireles, 405 F.3d 960, 962 (11th Cir. 2005), that "[p]ut another way, because the prior-conviction exception remains undisturbed after Booker, a district court does not err by relying on prior convictions to enhance a defendant's sentence." (footnote omitted). It came before we, in United States v. Gallegos-Aguero, 409 F.3d 1274, 1277 (11th Cir. 2005), found "no merit in [the] argument that the Sixth Amendment requires that a jury, not a judge, must determine whether [a] prior conviction is within the category of offenses specified in [U.S.S.G.] § 2L1.2(b)(1)(A)(vii)." And it came before we specifically held in United States v. Gibson, 434 F.3d 1234 (11th Cir. 2006), that the Sixth Amendment as interpreted in Apprendi, Blakely, and Booker did not prevent a judge, even under a mandatory guidelines system, from making the factfindings necessary to classify a prior conviction as a crime of violence or controlled substance offense for purposes of the career offender provisions of U.S.S.G. § 4B1.1(a).

15

The district court thought that even if Almendarez-Torres still permits a judge to determine "the existence of a prior conviction," the principles of Apprendi extended through Booker forbid a judge from determining "the factual nature of a prior conviction," 359 F. Supp. 2d at 1379–80, except to the extent he can infer it from the fact of conviction read against the statutory elements of the prior crime. That position is not justified in view of our decisions describing the non-effect of Apprendi and Booker on the Almendarez-Torres rule. Nor is it required by the language or reasoning of those three Supreme Court decisions or by the constitutional principles underlying them.

To be sure, the Supreme Court has instructed us that in determining the nature of a prior conviction for ACCA purposes the trial judge may not look beyond the statutory elements, charging documents, any plea agreement and colloquy or jury instructions, or comparable judicial record. Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254, 1257, 1263 (2005). There is implicit in the Shepard rule, however, a recognition that if the nature of the prior conviction can be determined from those types of records, under existing law the trial judge may make the determination. There would be no point in restricting the sources that a judge may consider in reaching a finding if judges were barred from making it. Shepard does not bar judges from finding whether prior convictions qualify for

16

ACCA purposes; it restricts the sources or evidence that a judge (instead of a jury) can consider in making that finding. In the present case, of course, there is no Shepard problem because the violent nature of each prior conviction, as "violent" is defined in the ACCA, can be determined from the face of the certified copy of the conviction document read along with the indictment and in light of the statutory elements of the offense.

The district court gave a lot of thought to this issue, and the opinion it published is not without its persuasive points. Realistically viewed, however, the district court's conclusion is less an application of existing precedent than a prediction of what the Supreme Court will hold when it chooses to address this issue in the future. Taking the principles stated in Apprendi, Blakely, and Booker and projecting them forward, the district court envisioned the overruling of at least some of the Almendarez-Torres decision. That prediction probably is correct; the Supreme Court may well overrule Almendarez-Torres. See Shepard v. United States, 543 U.S. 13, ___, 125 S. Ct. 1254, 1264 (2005) (Thomas, J., concurring) (counting noses to come up with a majority of justices ready to overrule the Almendarez-Torres decision); cf. Bass v. Bd. of County Comm'rs, 256 F.3d 1095, 1115 (11th Cir. 2001) ("You don't need a weatherman to know which way the wind blows.") (quoting Bob Dylan, Subterranean Homesick Blues, on Bringing it

17

<u>All Back Home</u> (Columbia 1965)).

The problem with lower courts basing decisions on predictions that the Supreme Court will overturn one of its own decisions is that the Supreme Court has repeatedly told us not to do it. <u>Hohn v. United States</u>, 524 U.S. 236, 252–53, 118 S. Ct. 1969, 1978 (1998) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality."); <u>Agostini v. Felton</u>, 521 U.S. 203, 237, 117 S. Ct. 1997, 2017 (1997) ("We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent."); <u>Rodriguez de Quijas v. Shearson/Am. Express, Inc.</u>, 490 U.S. 477, 484, 109 S. Ct. 1917, 1921–25 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decision."). We take that admonition seriously. <u>See Eng'g Contractors Ass'n of S. Fla. Inc. v. Metro. Dade County</u>, 122 F.3d 895, 908 (11th Cir. 1997) ("Of course, we take that admonition seriously."); <u>Brisentine v. Stone & Webster Eng'g Corp.</u>, 117 F.3d 519, 525 (11th Cir. 1997); <u>Scala v. City of Winter Park</u>, 116 F.3d 1396, 1399 n.2 (11th Cir. 1997) (following an earlier Supreme Court decision even though later

18

decisions of the Court had "cast some doubt" on it); Fla. League of Prof'l Lobbyists, Inc. v. Meggs, 87 F.3d 457, 462 (11th Cir. 1996) ("We take this admonition to heart, and we decline to take any step which might appear to overrule [prior Supreme Court decisions]."). We have applied it a number of times to this specific question. See, e.g., Gibson, 434 F.3d at 1246–47 (rejecting the contention that we should act as though Almandarez-Torres is no longer good law, and explaining that "[i]t is not given to us to overrule the decisions of the Supreme Court."); United States v. Thomas, 242 F.3d 1028, 1035 (11th Cir. 2001) ("[W]e are bound to follow Almendarez-Torres unless and until the Supreme Court itself overrules that decision.").

We need not reach the alternative argument of the government that, even if Almendarez-Torres were overruled by the Supreme Court, the mandatory minimum sentence for a defendant who is not an armed career criminal is 120 months. See 18 U.S.C. §§ 922(g)(1), 924(a)(2); Harris v. United States, 536 U.S. 545, 568, 122 S. Ct. 2406. 2420 (2002).

## IV.

The conviction is **AFFIRMED**. The sentence is **VACATED** and the case is **REMANDED** for resentencing consistent with this opinion.